**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 23-20073-CIV-ALTONAGA/Damian**

FLORAL LOGISTICS OF MIAMI, INC.,
a Florida Profit Corporation,

                        Plaintiff,

        -against-                          **CIVIL ACTION**

NEW YORK GARDEN FLOWER WHOLESALE,
INC., a New York Profit Corporation, and DHAN
PAIH, an individual,

                        Defendants.
-----------------------------------------------------------------/

**<u>DEFENDANTS' ANSWER TO THE COMPLAINT, AFFIRMATIVE
DEFENSES, DEMAND FOR JURY TRIAL AND THIRD AMENDED
COUNTERCLAIMS PER ORDER DATED JUNE 30, 2023</u>**

      Defendants, NEW YORK GARDEN FLOWER WHOLESALE, INC., a

New York Profit Corporation ("NY Garden") and DHAN PAIH a/k/a Daniel Bae,

an individual ("PAIH") (collectively "Defendants"), by and through the

undersigned counsel, Daniel D. Kim, Esq., PHV counsel, hereby submits this

Answer, Affirmative Defenses, and Counterclaims in response to the Complaint

served by Plaintiff FLORAL LOGISTICS OF MIAMI, INC ("Plaintiff" or "Floral

Logistics") and Demand a Trial by Jury as follows:

**PARTIES, JURISDICTION, VENUE**

    1.     Admitted.

    2.     Defendants admit to the extent that NY Garden is a New York

corporation but deny doing business in Florida.  Defendants leave to Plaintiff's

proof for personal jurisdiction arising out of the alleged Statement of Account,

Exhibit "A" of the Complaint and Credit Application attached as Exhibit "B"

therein.

      3.    Defendants deny that PAIH is a resident of New York and leaves to

Plaintiff's proof that the agreement confers jurisdiction in the State of Florida.

      4.    Admitted. However, the alleged damages exceed the minimum

amount ($75,000) required in diversity jurisdiction.

      5.    Admitted, and this Court is the proper venue for this diversity case.

### GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

      6.    Defendants are without knowledge or information sufficient to form

a belief as to the truth of these allegations.

      7.    Defendants admit only to the extent that NY Garden is in the

wholesale business of flowers in New York but object to Plaintiff's reference to

"the United States" as a characterization of the interstate business activity of

Garden Flower.

      8.    Defendants admit that Plaintiff was responsible for the transportation

of flowers to NY Garden from November 4, 2021, through August 11, 2022, but

lack knowledge or information sufficient to form a belief as to the "variety of

services to Defendant" and objects to the unspecified services as alleged.

      9.    Defendants neither admit nor deny the allegations contained in

paragraph 9 of the Complaint and leave Plaintiff to its proof in chief.

10.     Defendants deny PAIH's personal guaranty as alleged in paragraph 10 of the Complaint. Moreover, Defendants object to the insertion of "Guarantor" not found in the exact paragraph therein.  Defendants respectfully refer to the Court for its interpretation and applicability therein.

11.     Denied.

12.     Denied.

13.     Denied.

14.     Defendants admit to the extent that Plaintiff's letter was sent on or about August 23, 2022.  However, Defendants dispute the alleged debts.

15.     Denied.

;      16.     Denied.

17.     Denied, and Defendants respectfully refer to Court for the interpretation and applicability of the provision cited.

18.     Denied.

19.     Denied.

## COUNT 1
## OPEN ACCOUNT
### (Against NY Garden)

20.     Defendants repeat, reiterate, and reallege each and every denial heretofore made with respect to paragraphs "1" through "19" inclusive, with the same force and effect as if fully set forth at length herein.

21.     Defendants admit that there was a Credit Application executed on

September 26, 2019.  However, Defendants leave Plaintiff to its proof in chief to prove the existence of the alleged contract.

22.     Denied.

23.     Denied.

As to the **WHEREFORE** clause following Paragraph 23 of the Complaint, Defendants deny the appropriateness or permissibility of the relief sought therein and further deny that Plaintiff is entitled to any relief and/or damages.

### COUNT 2
### ACCOUNT STATED
### (Against NY Garden)

24.     As to paragraph 24 of the Complaint, answering Defendants repeat, reiterate, and reallege each and every denial heretofore made with respect to paragraphs "1" through "23" inclusive, with the same force and effect as if fully set forth at length herein.

25.     Denied.

26.     Denied.

27.     Denied.

As to the **WHEREFORE** clause following Paragraph 27 of the Complaint, Defendants deny the appropriateness or permissibility of the relief sought therein and further deny that Plaintiff is entitled to any relief and/or damages.

**COUNT 3**
**BREACH OF CONTRACT**
**(Against NY Garden)**

28.     Defendants repeat, reiterate, and reallege each and every denial heretofore made with respect to paragraphs "1" through "27" inclusive, with the same force and effect as if fully set forth at length herein.

29.     Defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations.  Defendants refer to this Honorable Court all questions of law as to the Florida Uniform Commercial Code.

30.     Defendants admit that there was a Credit Application executed on September 26, 2019, as shown in Exhibit "B".  However, Defendants leave Plaintiff to its proof in chief to prove the existence of the contract for its Composite Exhibit "A".

31.     Denied.

32.     Denied.

33.     Denied.

As to the **WHEREFORE** clause following Paragraph 33 of the Complaint, Defendants deny the appropriateness or permissibility of the relief sought therein and further deny that Plaintiff is entitled to any relief and/or damages.

**COUNT 4**
**BREACH OF CONTRACT**
**(Against PAIH)**

34.     Defendants repeat, reiterate, and reallege each and every denial heretofore made with respect to paragraphs "1" through "33" inclusive, with the

same force and effect as if fully set forth at length herein.

35.     Defendants admit that there was a Credit Application executed on September 26, 2019.  However, Defendants leave Plaintiff to its proof in chief to prove the existence of any contract.

36.     Denied.

37.     Denied.

38.     Denied.

As to the **WHEREFORE** clause following Paragraph 38 of the Complaint, Defendants deny the appropriateness or permissibility of the relief sought therein and further deny that Plaintiff is entitled to any relief and/or damages.

## COUNT 5
## UNJUST ENRICHMENT
### (Made in the Alternative Against NY Garden)

39.     Defendants repeat, reiterate, and reallege each and every denial heretofore made with respect to paragraphs "1" through "38" inclusive, with the same force and effect as if fully set forth at length herein.

40.     These allegations assert a legal conclusion to which no response is required.

41.     These allegations assert a legal conclusion to which no response is required.

42.     Denied.

As to the **WHEREFORE** clause following Paragraph 42 of the Complaint, Defendants deny the appropriateness or permissibility of the relief sought therein

and further deny that Plaintiff is entitled to any relief and/or damages.

## COUNT 6
## PROMISSORY ESTOPPEL
### (Made in the Alternative Against PAIH)

43.     Defendants repeat, reiterate, and reallege each and every denial heretofore made with respect to paragraphs "1" through "42" inclusive, with the same force and effect as if fully set forth at length herein.

44.     Denied.

45.     These allegations assert a legal conclusion to which no response is required.

46.     Denied.

47.     Denied.

As to the **WHEREFORE** clause following Paragraph 47 of the Complaint, Defendants deny the appropriateness or permissibility of the relief sought therein and further deny that Plaintiff is entitled to any relief and/or damages.

**WHEREFORE,** Defendants deny the entirety of Plaintiff's prayer for relief.

## AFFIRMATIVE DEFENSES

The following affirmative defenses are raised independently in the alternative or in conjunction or combination with each other.

## FIRST AFFIRMATIVE DEFENSE

A.     The Credit Application signed on September 26, 2019 (Exhibit "B") does not constitute PAIH's personal guaranty for lack of consideration, proper

absolute and unconditional guarantee "language" and terms required to be binding as a personal guarantor of NY Garden's indebtedness.

## SECOND AFFIRMATIVE DEFENSE

B.      Exhibit "B" contained PAIH's just one signature. The document is unenforceable as a "guarantor." Alternatively, in the event the Court finds PAIH's signature is a personal guarantor of his obligations, any obligations alleged against NY Garden are unenforceable.

## THIRD AFFIRMATIVE DEFENSE

C.      Defendants already paid for approximately $23,377.57 listed on the Invoices on Exhibit "A".

## FOURTH AFFIRMATIVE DEFENSE

D.      The defective goods were delivered in an unsellable condition. As such, Plaintiff could not charge them to NY Garden.

## FIFTH AFFIRMATIVE DEFENSE

E.      Plaintiff's claim is barred to the extent Plaintiff failed to perform the delivery of goods or to the extent that Plaintiff failed to satisfy a condition precedent to this action. In other words, Plaintiff's claims are barred, in whole or in part, by the "first to breach" legal principle.

## SIXTH AFFIRMATIVE DEFENSE

F.      Plaintiff's claims are barred by the principles of Statute of Frauds, laches, estoppel, waiver, and unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE

G.      Plaintiff's damages must be reduced, and set off from monies received from Defendants' checks and "defective" goods.

## EIGHTH AFFIRMATIVE DEFENSE

H.      Plaintiff knew or should have known that Defendants protested, objected, and related credits due from the farm in Colombia.  Thus, Plaintiff's claim fails because it did not mitigate damages.

## NINTH AFFIRMATIVE DEFENSE

I.      Plaintiff's claims are barred in whole or in part on the ground that if Plaintiff was damaged, such damage was a direct and proximate result of the intervening and superseding actions on the part of Plaintiff, Plaintiff's agents, independent contractors, and/or transportation personnel, not Defendants, and any such intervening or superseding cause of the goods being destroyed cannot be ascribed to any legal duty violated by Defendants.

**WHEREFORE,** Defendants demand judgment in their favor dismissing Plaintiff's Complaint with prejudice and awarding (i) costs; (ii) reasonable attorney's fees; and (iii) such further relief as the Court deems just and proper.

## <u>COUNTERCLAIMS</u>

NY GARDEN counterclaims against Floral Logistics and alleges:

1.      The counterclaims asserted herein arise out of the same transactions and occurrences as Counter-Defendant's claims.

2.      These counterclaims allege damages in excess of $75,000.00,

exclusive of interest, costs, and attorney's fees, for breach of agreement (oral or written), negligence, or unjust enrichment, in failing to deliver good quality flowers from South America through Plaintiff to NY Garden's principal place of business located at 171-10 39th Avenue, Flushing, County of Queens, New York 11358.

3.     This Court has supplemental jurisdiction over these counterclaims under 28 U.S.C. §1367.

## FIRST CAUSE OF ACTION: BREACH OF AGREEMENT

4.     In or about April 2022, NY Garden contacted farms in Colombia, Valley, Cultivos Del Norte, and CQ Flowers (collectively "Farms") to obtain the best quality flowers for Mother's Day on May 8, 2022.

5.     NY Garden's employees spent time and money to secure the best quality goods to be sold to the approximately twenty small retail flower shops and businesses in the boroughs of New York: Brooklyn, Bronx, Queens, and Long Island.

6.     NY Garden had maintained a long-term relationship and developed creditworthiness with these small businesses which greatly relied on NY Garden's shipments.

7.     In April 2022, all aforesaid farms confirmed that they had loaded the goods via airplane by transferring custody to Floral Logistics.

8.     Floral Logistics agreed to deliver the goods via air transportation from Colombia to Florida and then by ground courier from Florida to NY

Garden's business location.

9.       NY Garden reasonably relied on Floral Logistics's promise to deliver the goods in time, while safeguarding the quality of the flowers.

10.      Floral Logistics agreed to deliver the goods on time, by the end of April, for NY Garden's wholesale business for Mother's Day on May 8, 2022.

11.      The aforesaid flowers were scheduled to be delivered at the end of April to NY Garden's business location.  They were not.  They arrived beyond the expected date on the first week of May 2022.

12.      Floral Logistics not only failed to deliver on time but breached the agreement in failing to keep safe the quality of the flowers in their journey from Colombia to New York.

13.      When the boxes were opened, the flowers were in bad condition, burned, "warmed" out, and defective such that they could not be sold to retailers.

14.      The total amount paid for flowers combined with the transportation fee due to Floral Logistics was $80,909.31.

15.      NY Garden lost $51,081 in profits it would have received from its retail customers.

16.      Unless this Court denies Floral Logistics's claims in the amount of $80,909.31 (Exhibit "D-1"), the loss to NY Garden would be $131,990.31.

17.      As a direct and proximate result of Floral Logistics's breach of contract and breach of implied covenant of good faith and fair dealing, NY Garden has suffered loss in the amount of $51,081, as well as loss of reputation and loss of

business relationships as a result of non-delivery to its retail customers for Mother's Day sales.

## SECOND CAUSE OF ACTION: (ALTERNATIVE PLEADING: NEGLIGENT DELIVERY)

18.    In the event this Court finds no contract exists between the parties, NY Garden alleges negligent misrepresentation on the part of Floral Logistics.

19.    Floral Logistics holds itself out as specializing in timely transportation and handling of critical temperature-sensitive shipments (flowers) and offers delivery to NY Garden's wholesale business premises in Flushing, New York.

20.    Floral Logistics knew or should have known that NY Garden must receive the goods by the end of April 2022 to redistribute them to retail business customers to prepare them for Mother's Day sales.

21.    There is a history of similar transactions between NY Garden and Floral Logistics.

22.    According to Invoice #225312-07 issued on April 20, 2022, by Flora Logistics for $4,761.10, it took custody of temperature sensitive flowers from the farm Cultivos Del Norte.

23.    According to Invoice #225416-05 issued on April 22, 2022, by Flora Logistics for $20,067.50, it took custody of temperature sensitive flowers from the farm Cultivos Del Norte.

24.    According to Invoice #225412-07 issued on April 23, 2022, by Flora Logistics for $5,432.10, it took custody of temperature sensitive flowers from the

farm Cultivos Del Norte.

25.     According to Invoice #225479-05 issued on April 25, 2022, by Flora Logistics for $4,183.00, it took custody of temperature sensitive flowers from the farm Cultivos Del Norte.

26.     According to Invoice #225637-05 issued on April 27, 2022, by Flora Logistics for $4,766.40, it took custody of temperature sensitive flowers from the farm Cultivos Del Norte.

27.     According to Invoice #225312-07 issued on April 19, 2022, by Flora Logistics for $4,761.10, it took custody of temperature sensitive flowers from the farm Cultivos Del Norte.

28.     According to Invoice #225662-10 issued on April 29, 2022, by Flora Logistics for $6,209.50, it took custody of temperature sensitive flowers from the farm Cultivos Del Norte.

29.     According to Invoice #225711-09 issued on April 29, 2022, by Flora Logistics for $22, 879.60, it took custody of temperature sensitive flowers from the farm Cultivos Del Norte.

30.     According to Invoice #225416-05 issued on April 22, 2022, by Flora Logistics for $2,495.00, it took custody of temperature sensitive flowers from the farm Valley.

31.     According to Invoice #225711-09 issued on April 29, 2022, by Flora Logistics for $2,688.10, it took custody of temperature sensitive flowers from the farm Valley.

32.     According to Invoices #225364-10 and #225364-22, issued on April 21, 2022, by Flora Logistics for $2,466.11, it took custody of temperature sensitive flowers from the farm CQ Flowers.

33.     Floral Logistics issued a total amount of Invoices for $80,909.31, which includes all aforesaid Invoices and other invoices yet to be discovered through discovery.

34.     Floral Logistics had promised, and had a duty, to reasonably take good care of the sensitive flowers from Colombia to Florida and then to NY Garden's wholesale business premises in Flushing, New York.

35.     Floral Logistics took control of the goods via air courier and ground courier, delivering the shipments to NY Garden's wholesale business premises in Flushing, New York.

36.     Floral Logistics and its servants, agents, employees, and/or independent contractors failed to perform duties of "bailment" under Florida law.

37.     Floral Logistics, its servants, agents, employees, independent contractors, air couriers, and its ground courier ANTHONY S. TRUCKIN were negligent in their duties wherein NY Garden is not in privity, and there was no contract for their services.

38.     When the boxes were opened at NY Garden's premises, the flowers were in bad condition, burned, "warmed" out, and defective such that they could not be sold to NY Garden's retail store customers.

39.     Floral Logistics, its servants, agents, employees, independent

14

contractors, air couriers, and ground courier ANTHONY S. TRUCKIN were

negligent in delivering defective flowers as if they were not.

40.     Floral Logistics failed to exercise reasonable care in performing the

undertaking and delivering, which resulted in temperature-related defects in the

flowers. This is contrary to their representation of specializing in timely

transportation and handling of critical temperature-sensitive shipments for NY

Garden's Mother's Day sales.

41.     On or about September 26, 2019, NY Garden submitted an

Application For Credit (Exhibit "B" to the Complaint).  This was an application

for credit from Floral Logistics and was not a contract for all shipments by which

Floral Logistics undertook custody of flowers from Columbia to New York for

NY Garden's Mother's Day sales.

42.     Per ¶ 5 of the Application For Credit, Floral Logistics represented

that it would "reasonably dispatch" all shipments.

43.     All aforesaid shipments from Colombia were not reasonably

dispatched, safeguarded, and delivered to NY Garden.

44.     Alternatively, Floral Logistics breached its duties as follows:

    i) in failing to safeguard the goods promptly to the freezer

    throughout transportation;

    ii) in failing to coordinate the air courier and the ground courier

    safely and reasonably to safeguard the temperature sensitive

    goods;

(iii) in failing to inspect the goods reasonably and safely upon receiving the goods from Columbia Airport to the International airport in Florida;

(iv) in failing to provide adequate personnel to operate the logistic system to ensure a reasonable safeguarding the temperature sensitive goods via air and ground couriers;

(v) in failing to maintain reasonable steps in isolating, blocking and securing the temperature-sensitive goods;

(vi) in failing to adequately inspect the goods in time for defects and the inadequate logistic system providing reasonably safe measures for the temperature-sensitive goods under the circumstances;

vi) in providing, operating, and maintaining the logistic system with knowledge, actual or constructive, that its chains of the system were unreasonably unsafe for the temperature-sensitive goods;

vii) in failing to notify NY Garden in time that the goods could not meet the deadline, and the goods were "burned" and "defective,";

viii) negligent in hiring incompetent employees, servants, contractors including the air courier and ground courier ANTHONY S. TRUCKIN to ensure the quality of temperature sensitive flowers;

ix) upon information and belief, Counterclaim Defendant breached a nondelegable duty owed to NY Garden as required by applicable Florida and federal law.

16

45.     Counterclaimant cannot more specifically allege the acts of negligence in designing a logistic system, operation, maintenance, and inspection on the part of Floral Logistics and its servants, agents, employees, and/or independent contractors, for the reason that facts in that regard are peculiarly within the knowledge of Counterclaim Defendant Floral Logistics.  As such, the doctrine of *res ipsa locqutur* is applicable.  In this connection, NY Garden would show that the designing system, application of operation, maintenance, and inspection of the temperature-sensitive flowers and couriers were within the exclusive control of Floral Logistics, its servants, agents, employees, and/or independent contractors.

46.     Counterclaimant does not have a reasonable means of ascertaining the method or manner in which the logistic system and couriers were designed, applied, operated, maintained, and inspected.

47.     Counterclaimant was directed to pay for the aforesaid defective shipments that existed under the control of Floral Logistics.

48.     The negligence of Floral Logistics, its servants, agents, employees, and/or independent contractors was a proximate cause and one of the significant factors causing damages to the goods and consequential loss of business reputation and money.

49.     As a direct and proximate result of Floral Logistics' aforesaid negligence, NY Garden has lost $51,081 in profits, as well as the loss of reputation and goodwill as to its business relationships with retailers as a result of non-

17

delivery to its retail customers for Mother's Day sales.

### THIRD CAUSE OF ACTION: (ALTERNATIVE PLEADING: PROMISSORY ESTOPPEL)

50.     Counterclaimant NY Garden alleges in the alternative to its breach of contract claim that NY Garden is entitled to recover under the doctrine of promissory estoppel if it is determined that either a valid and enforceable contract does not exist, the existing contract does not cover the goods to be delivered to be redistributed to NY Garden's retail business customers to prepare them for Mother's Day sales on May 8, 2022 between NY Garden and Floral Logistics, or the existing contract is void, invalid, or enforceable.

51.     On or about April 19, 2022, Farms delivered the flowers to the airport and received confirmation from Floral Logistics.  In connection with this shipment, an airway bill #406-0915 8332 was issued by Floral Logistics for the invoiced goods, amounting to $4,761.10.

52.     On or about April 21, 2022, Farms delivered the flowers to the airport and received confirmation from Floral Logistics.  In connection with this shipment, an airway bill #145-0893 3831-5102 was issued by Floral Logistics for the invoiced goods, amounting to $2,466.11.

53.     On or about April 22, 2022, Farms delivered the flowers to the airport and received confirmation from Floral Logistics. Floral Logistics issued airway bill #406-0915 8505 for the invoiced goods, totaling $2,688.00, and airway bill #406-0915 8505 for $20,067.50 in connection with this transaction.

18

54.     On or about April 23, 2022, Farms delivered the flowers to the airport and received confirmation from Floral Logistics.  In connection with this shipment, airway bill #406-0915 8494 was issued by Floral Logistics for the invoiced goods, amounting to $5,423.10.

55.     On or about April 25, 2022, Farms delivered the flowers to the airport and received confirmation from Floral Logistics.  In connection with this shipment, an airway bill #406-0915 8542 was issued by Floral Logistics for the invoiced goods, amounting to $4,183.00.

56.     On or about April 27, 2022, Farms delivered the flowers to the airport and received confirmation from Floral Logistics.  In connection with this shipment, airway bill #406-0915 8645 was issued by Floral Logistics for the invoiced goods, amounting to $4,766.40.

57.     On or about April 29, 2022, Farms delivered the flowers to the airport and received confirmation from Floral Logistics. Floral Logistics issued airway bill #406-0915 1240 for the invoiced goods, totaling $2,495.00 and $22,879.50, and airway bill #406-0915 2362 for $6,209.50, in connection with this transaction.

58.     All of the aforesaid transactions were made with Floral Logistics' unambiguous promises to deliver the temperature-sensitive flowers to NY Garden for its redistribution to the aforesaid retailer stores for the Mother's Day sale by issuing the aforesaid airway bills.

59.     In reliance on Floral Logistics' promises and actions, NY Garden

contracted with its customers, approximately twenty small retail flower shops and businesses, in the boroughs of New York: Brooklyn, Bronx, Queens, and Long Island to supply the best quality flowers for the Mother's Day sale (May 8, 2022).

60.     It was expected and foreseeable that Floral Logistics would cause or induce NY Garden to contract with the retail flower shops and businesses for the Mother's Day sale events in reasonable reliance on Floral Logistics' issuance of airway bills and undertaking air transportations and ground transportation via and ground courier ANTHONYS. TRUCKIN.

61.     NY Garden had been doing business with Floral Logistics in the past and the industry widely recognizes the Mother's Day sale as a highly profitable event.

62.     When the flowers finally arrived late, and all of the aforesaid shipment boxes were opened at NY Garden's premises, the flowers were in bad condition, burned, "warmed" out, and defective such that they could not be sold to NY Garden's retail store customers.

63.     As a result of NY Garden's reliance on Floral Logistics' promises, NY Garden sustained actual and significant loss of $51,081 in profits, as well as the loss of reputation and goodwill as to its business relationships with retailers as a result of late and defective goods delivery.

## PRAYER FOR RELIEF

**WHEREFORE,** with respect to the foregoing causes of action, NY Garden respectfully requests that Court:

   i.  under the First Cause of Action, award judgment for Compensatory Damages, Consequential Damages, and Special Damages against Plaintiff/ Counterclaim Defendant to be determined by Jury, not less than $75,000.00;

   ii.  in the alternative or separately under the Second Cause of Action, award judgment for damages against Plaintiff/Counterclaim Defendant to be determined by Jury, not less than $75,000.00;

   iii.  in alternative or separately under the Third Cause of Action, award judgment for damages against Plaintiff/Counterclaim Defendant to be determined by Jury, not less than $75,000.00;

   iv.  order Plaintiff/Counterclaim Defendant to provide an accurate accounting as to all invoices paid;

   v.  award reasonable attorney's fees, costs of suit, plus interest; and

   vi.  Grant such further relief as the Court deems just and proper.

Dated: July 6, 2023      Respectfully submitted,

           LAW OFFICES OF DANIEL D. KIM
           PHV Attorney for Defendants
           */s/ Daniel Kim*
           By: Daniel D. Kim, Esq.
           danieldkimlaw@gmail.com
           (201) 741-1114 c.p.
           (646) 349-1732 fax

           JOSE A. BLANCO, P.A.
           102 E 49th ST,
           Hialeah, FL 33013
           305-349-3463
           jose@blancopa.com

By: */s/ Jose A. Blanco*
JOSE A. BLANCO, ESQ.
Florida Bar No. 062449

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on July 6, 2023. I also certify that the foregoing document is being served this day on counsel of record, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner to the following: Ryan M. Clancy, Esq. (ryan@business-esq.com), Anne Victoria Kotlarz, Esq. (Anne@business-esq.com), and Yamila Lorenzo, Esq. (yamila@business-esq.com) AINSWORTH + CLANCY, PLLC, *Attorneys for Plaintiff*, 801 Brickell Ave., 8th Fl., Miami, FL 33131. This certificate is taken as prima facie proof of such service in compliance with FRJA 2.516.

By: */s/ Jose A. Blanco*
JOSE A. BLANCO, ESQ.