UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-20073-CIV-ALTONAGA/Damian

FLORAL LOGISTICS OF
MIAMI, INC.,

     Plaintiff,

v.

NEW YORK GARDEN FLOWER
WHOLESALE, INC.; *et al.*,

     Defendants.

_____/

**ORDER**

**THIS CAUSE** came before the Court on Plaintiff Floral Logistics of Miami, Inc.'s ("Floral Logistics[']") Motion for Summary Judgment [ECF No. 49], filed on August 9, 2023. Defendants, New York Garden Flower Wholesale, Inc. ("NY Garden") and Dhan Paih, filed a Response [ECF No. 54]. Plaintiff did not file a reply in support of its Motion. The Court has carefully considered the Complaint [ECF No. 1-2], the record, the parties' written submissions,[1] and applicable law. For the following reasons, the Motion is granted in part and denied in part.

**I. BACKGROUND**

This case stems out of an agreement for the shipment of flowers. (*See generally* Compl.). NY Garden, a flower wholesaler and distributor based in New York City, hired Plaintiff to provide shipping and hauling services. (*See id.* ¶¶ 6–8; SOF ¶¶ 3–4; Paih Aff. ¶ 3). Plaintiff shipped

---

[1] The parties' factual submissions include Plaintiff's Statement of Material Facts ("SOF") [ECF No. 50]; Defendants' Response to Plaintiff's Statement of Facts and Additional Facts ("SOF Response") [ECF No. 53]; and Plaintiff's Reply to the Statement of Material Facts ("SOF Reply") [ECF No. 56]. As evidence, Plaintiff includes an Invoice [ECF No. 50-2], a Credit Application [ECF No. 50-3], a Debt Validation Notice [ECF No. 50-4], and an Affidavit from its representative, Kathy Luna [ECF No. 50-1] ("Luna Aff."). In response, Defendants submit an Affidavit from Dhan Paih ("Paih Aff.") [ECF No. 54-1]; and a declaration from Defendants' counsel, Daniel Kim [ECF No. 54-2] ("Kim Aff.").

flowers from Colombia to NY Garden from November 2021 through August 2022 and invoiced NY Garden for these services.  (*See* Compl. ¶¶ 8–9; *see generally* Invoice).  After NY Garden failed to pay for all the invoiced amounts, Plaintiff issued a Debt Validation Notice and commenced this action.  (*See* Compl. ¶¶ 13–16; *see generally* Debt Validation Notice).

According to Plaintiff, this is a straightforward case.  NY Garden never submitted complaints related to the shipping services prior to issuance of the Debt Validation Notice in August 2022 (*see* SOF ¶¶ 10–13), and the Invoice accurately reflects the amount owed at the time it was sent to Defendants (*see* SOF Reply ¶ 22).  Plaintiff seeks to recover the outstanding sum of $181,649.46 under multiple theories of liability from NY Garden as well as from Paih, NY Garden's president and owner (*see* SOF Resp. ¶ 5), as guarantor of NY Garden's obligations (*see* Compl. ¶¶ 20–47).[2]

According to Paih, he regularly complained on behalf of NY Garden about missing boxes and damaged flowers, including in July 2022, but was repeatedly ignored.  (*See* SOF Resp. ¶¶ 10–13, 18; Paih Aff. ¶¶ 6–8, 11, 20–21).  NY Garden brings counterclaims for a large shipment of flowers ahead of Mother's Day in 2022, which NY Garden states arrived late and damaged.  (*See generally* Third Am. Answer [ECF No. 42] 10–21 ("Countercls.")).  Based on these complaints, Defendants dispute the amount owed for Plaintiff's services.  (*See generally id.*; Resp. SOF ¶ 14; Paih Aff. ¶¶ 22–23).

Plaintiff moves for summary judgment on five of its six claims and all of Defendants' affirmative defenses.  (*See generally* Mot.).  The Invoice included in support of Plaintiff's Motion includes item codes, prices, and shipment dates, but no additional terms.  (*See generally* Invoice).  The Credit Application, which is filled in with NY Garden's information and signed by Paih, states

---

[2] Plaintiff agrees to reduce the amount owed to $158,271.89 for purposes of its Motion, crediting the payments Defendants state they have already made.  (*See* SOF Reply ¶ 22).

that any claims not submitted by both telephone and in writing within 24 hours of receipt of a shipment are waived and requires Paih to guarantee NY Garden's debt obligations. (*See* Credit Application 2). In response, Defendants attach to Kim's Affidavit an email regarding the parties' discovery production (*see* Kim Aff. 3), and 60 photocopied pages of checks which presumably correspond to transactions between the parties (*see id.* 5–63). (*See generally* Resp.).

## II. LEGAL STANDARD

Summary judgment may be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The Court draws all reasonable inferences in favor of the party opposing summary judgment. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (citation omitted).

If the moving party bears the burden of proof on the relevant issue at trial, it can meet its summary judgment burden only "by presenting *affirmative* evidence showing the absence of a genuine issue of material fact — that is, facts that would entitle it to a directed verdict if not controverted at trial." *Emery v. Talladega Coll.*, 169 F. Supp. 3d 1271, 1280–81 (N.D. Ala. 2016) (emphasis in original; citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)). With that showing made, the moving party "'is entitled to summary judgment unless the non-moving party, in response, comes forward with significant, probative evidence demonstrating the

existence of a triable issue of fact.'" *Fitzpatrick*, 2 F.3d at 1115 (alteration adopted; quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc)).

At summary judgment, courts may consider only evidence reducible to an admissible form at trial. *See Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) (citation omitted). "Summary judgment may be inappropriate even where the parties agree on the basic facts [] but disagree about the inferences that should be drawn from these facts." *Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-cv-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (alteration added; citation omitted). Indeed, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment" and proceed to trial. *Id.* (alteration added; citations omitted).

## III. DISCUSSION

Plaintiff argues summary judgment in its favor is proper as a matter of law on five of its six claims as well as all affirmative defenses. (*See generally* Mot.).[3] According to Defendants, Plaintiff "oversimplifies material facts and avoids [] issues which must be decided by a jury." (Resp. 5 (alteration added)). Plaintiff indeed fails to meet its burden to establish summary judgment is appropriate on its claims and Defendants' affirmative defenses, save for part of the second affirmative defense.

### A.    Count II: Account Stated

Plaintiff seeks summary judgment on its account stated claim against NY Garden. (*See* Mot. 4). "For an account stated to exist as a matter of law, there must be an agreement between the parties that a certain balance is correct and due and an express or implicit promise to pay this

---

[3] While Plaintiff asserts "there are no genuine disputes of material fact and judg[]ment is proper as a matter of law" on all its claims (Mot. 3 (alteration added)), the Motion includes no argument or analysis regarding Count I (*see generally id.*), which asserts an open-account claim (*see* Compl. ¶¶ 20–23).

balance." *Merrill-Stevens Dry Dock Co. v. Corniche Exp.*, 400 So. 2d 1286, 1286 (Fla. 3d DCA 1981) (citations omitted).[4]  More specifically, to establish a claim for account stated, Plaintiff must prove the following:

> 1.  Plaintiff and [D]efendant had transactions between them;
>
> 2.  Plaintiff and [D]efendant agreed upon the balance due or [P]laintiff rendered a statement to [D]efendant and [D]efendant failed to object within a reasonable time to a statement of its account;
>
> 3.  Defendant expressly or implicitly promised to pay [P]laintiff the amount set forth in the statement; and
>
> 4.  Defendant has not paid [P]laintiff [all] of the amount[s] owed under the account.

*James Dar, LLC v. OJ Commerce.com, Inc.*, No. 21-61901-Civ, 2023 WL 418666, at *6 (S.D. Fla. Jan. 11, 2023) (alterations added; quotation marks and citation omitted); *see also In re Standard Jury Instructions — Cont. & Bus. Cases*, 116 So. 3d 284, 331 (Fla. 2013).

It is undisputed that Plaintiff and NY Garden had transactions between them, and NY Garden has not paid the full amount invoiced by Plaintiff.  (*See* SOF ¶¶ 4–5; SOF Resp. ¶¶ 4–5; Paih Aff. ¶ 11 (stating NY Garden made payments for less than the total amount reflected in the Invoice)).  But the parties dispute the remaining elements of the claim.

Plaintiff asserts there is an "express agreement between the parties" to pay the invoiced amounts (Mot. 4), but NY Garden states there is no such express agreement because it has repeatedly objected to particular charges and to the accuracy of the Invoice (*see* Resp. 8–9).  NY Garden asserts the Invoice balance is incorrect because it fails to credit payments already made. (*See id.* 9; SOF Resp. ¶¶ 14, 22; Paih Aff. ¶ 11).  And Paih, as NY Garden's representative, objected

---

[4] The parties assume and apparently do not dispute Florida law applies. (*See generally* Mot.; Resp.; Reply). The Court will not disturb this assumption.

to specific amounts billed numerous times, including in July 2022 and thereafter, and was always "ignored or rejected[.]" (Paih Aff. ¶ 6 (alteration added); *see* Resp. 8–9).

Plaintiff maintains the Invoice was correct at the time it was sent but agrees to reduce the balance owed by the amount of NY Garden's alleged payments for purposes of its Motion, thereby concluding that the accuracy of the Invoice "is not in dispute." (SOF Reply ¶ 22). Plaintiff's concession, however, fails to address Defendants' objections to specific charges. According to Plaintiff, "NY Garden never once prior to Plaintiff sending a 'Violation of Debt Notice' on August 23, 2022, objected to the amount that Plaintiff billed for the shipping services." (Mot. 4 (footnote call number omitted); *see also* Compl. ¶ 26; SOF Reply ¶ 19 ("Defendants did not complain or take issue with any of the services[.]" (alteration added))). This assertion, supported only by Luna (*see* Luna Aff. ¶ 10) — who Plaintiff admits never spoke to Defendants on the phone (*see* SOF Resp. ¶ 18; SOF Reply ¶ 18) — disregards Defendants' claimed objections or their reasonableness.

The Court cannot conclude from the record that NY Garden never objected or that it failed to object to the invoiced amounts within a reasonable time. *See, e.g.*, *Robert C. Malt & Co. v. Kelly Tractor Co.*, 518 So. 2d 991, 992 (Fla. 4th DCA 1988) (finding summary judgment on account stated claim was improper even where the only communicated objection to the invoiced amounts was in litigation, made several months after the defendant received the initial invoice).[5] Because a genuine dispute of fact exists as to the account stated claim, summary judgment is inappropriate.

---

[5] Plaintiff asserts the express agreement between the parties is evidenced by the Invoice and Credit Application — the latter of which contains specific procedures for objecting to a shipment. (*See* Mot. 4). For purposes of the account stated claim, however, Plaintiff neither argues Defendants failed to comply with the terms of the Credit Application in making objections nor cites authority for why the terms of the Credit Application should apply to its claim. (*See id.*; Compl. ¶¶ 24–27). Therefore, the Court does not consider the applicability of the Credit Application to determine whether Defendants objected to the invoiced amounts within a reasonable time.

CASE NO. 23-20073-CIV-ALTONAGA/Damian

### B.      Count III: Breach of Contract by NY Garden

Plaintiff seeks summary judgment on Count III of its Complaint, a breach-of-contract claim against NY Garden.  In support, Plaintiff recites the bare elements of the claim and baldly asserts, without reference to legal authority, that the Invoice and Credit Application constitute valid contracts; NY Garden did not object to the terms of those documents; NY Garden materially breached the contracts by not paying for shipping services; and NY Garden's breach caused Plaintiff damages.  (*See* Mot. 5).  Defendants maintain their objections to the invoiced amounts put the Invoice in genuine dispute; and advance baffling arguments related to ambiguity, unconscionability, and course of dealing.  (*See* Resp. 10–12).  Notwithstanding Defendants' lackluster briefing, Plaintiff fails to meet its burden.

To assert a breach-of-contract claim, "Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach."  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citation omitted).  It is hornbook law that "[f]or there to be an enforceable contract, 'there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained.'"  *W. Const., Inc. v. Fla. Blacktop, Inc.*, 88 So. 3d 301, 304 (Fla. 4th DCA 2012) (alteration added; citation omitted).  Plaintiff stumbles at the outset by failing to establish the material terms it claims NY Garden has breached.

To be sure, the parties do not dispute they had an agreement for the shipment of flowers (*see* SOF ¶ 4; SOF Resp. ¶ 4; Paih Aff. ¶ 3).  In fact, NY Garden brings a counterclaim of breach of agreement in relation to a shipment Plaintiff made in May 2022.  (*See* Countercls. ¶¶ 4–17).  But the parties disagree about the terms of their contract.

Defendants object to the accuracy of the Invoice and challenge the applicability of the Credit Application's procedure for submitting complaints. (*See* Resp. 9, 11; *see also* Paih Aff. ¶¶ 6–7, 11, 21). A material dispute of fact regarding the terms that control an agreement, or the amount owed under a contract, is sufficient to preclude summary judgment. *See Interested Lloyds Underwriters v. Danzas Corp.*, 508 F. Supp. 3d 1249, 1265 (S.D. Fla. 2020) ("Although interpretation of a contract is a question of law, which documents comprise the contract is a question of fact; and if the parties disagree on this point, summary judgment is not appropriate." (alteration adopted; citations and quotation marks omitted)); *Fid. Life Ass'n v. Cohen*, No. 9:15-cv-81552, 2017 WL 11220360, \*2–\*3 (S.D. Fla. Jan. 12, 2017) (granting summary judgment only after finding there was no genuine dispute of fact as to either the defendant's liability *or* the amount owed under a contract).

According to Plaintiff, there is no dispute as to the amount owed because "NY Garden was given a reasonable time to object to the terms and did not do so." (Mot. 5 (footnote call number omitted)). Again, this fails to address Paih's objections to the amounts invoiced. And Plaintiff's invocation of the Credit Application does not resolve the issue, because Plaintiff has offered no cogent argument — nor has it cited any authority — for why the Credit Application's terms form part of the parties' agreement. (*See generally id.*).

The Credit Application states that any claims or countersuits are waived unless the applicant makes its claim "BOTH in writing by email or fax, and by telephone within 24 hours of receipt of shipment." (Credit Appl. 2). Although Paih states he submitted various objections to shipments on NY Garden's behalf, he does not affirm these objections were made in writing or within 24 hours of the shipments. (*See generally* Resp.; Paih Aff.). It is also true that all the attacks Defendants lob against the Credit Application's provision are unavailing. For example,

8

they declare the provision is "ambiguous" but point to no ambiguity (Resp. 10); and they assert the provision is unconscionable but make no attempt to demonstrate unconscionability under Florida law, which demands that Defendants establish both procedural and substantive unconscionability (*see id.* 11; Paih Aff. ¶ 8); *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1157–59 (Fla. 2014) (explaining the standard for unconscionability).

Defendants' argument that the provision "has been waived or modified based on [the parties'] conduct of dealings" has some legs. (Paih Aff. ¶ 10 (alteration added); *see* SOF Resp. ¶ 19; *see also* Paih Aff. ¶ 6 (referencing generally that "[e]very time [Paih] called, [Plaintiff's employee(s)] . . . told [Paih] to submit the claims form" without mentioning any other procedural requirements or citing any procedural requirements to deny the claims, instead simply ignoring him (alterations added))). But waiver is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), and "a defendant relying solely upon an affirmative defense to thwart a plaintiff's summary judgment motion must establish both the applicability of the defense(s) and triable issues of fact as to the existence of each essential element of that defense[,]" *Qantum Commc'ns Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1260 (S.D. Fla. 2007) (alteration added; citation and quotation marks omitted). Defendants do not meet their burden here.[6]

Nevertheless, even rejecting Defendants' argument, Plaintiff has failed to carry its burden to demonstrate the Credit Application is itself a contract or that its terms have been incorporated into the parties' agreement. As common sense would suggest, an application for credit is not a binding contract until the lender decides to extend credit under it. *See Fin. Fed. Sav. & Loan Ass'n of Dade Cnty. v. Cont'l Enters., Inc.*, 338 So. 2d 907, 908 (Fla. 3d DCA 1976); *cf. Metro Bldg.*

---

[6] Unconscionability is also an affirmative defense. *See Neiman v. Galloway*, 704 So. 2d 1131, 1132 (Fla. 4th DCA 1998) (noting "unconscionability is an affirmative defense which must be raised by proper pleading").

*Materials Corp. v. Republic Nat. Bank of Miami*, 919 So. 2d 595, 598 (Fla. 3d DCA 2006) ("Submission of an application and associated documentation constitutes a request for credit but does not bind the lender to extend the credit." (citing *Cont'l Enters., Inc.*, 338 So. 2d at 908)).

The Credit Application, as its title reflects, is an "*Application* for Credit[,]" and its terms state that "Floral Logistics of Miami, Inc. is not hereby committed to extend any credit whatsoever." (Credit Appl. 2 (alteration and emphasis added)); *see Custom Design Expo, Inc. v. Synergy Rents, Inc.*, 327 So. 3d 427, 429 (Fla. 2d DCA 2021) (analyzing the language of a credit application to determine whether it constituted a contract). Remarkably, Plaintiff nowhere states that it ever approved an extension of credit for NY Garden under the Credit Application or that the charges on the Invoice were made subject to the terms of the Credit Application. (*See generally* Mot.; Compl.; Luna Aff.). Defendants also do not concede a connection between the Credit Application and the shipping agreement, insisting that the purpose of the Credit Application was to obtain Paih's credit score. (*See* Resp. 10; Paih Aff. ¶ 4).

Perhaps the Court could assume the invoiced amounts were made on credit — otherwise, why would Plaintiff continue making shipments for over nine months when payments remained outstanding? (*See generally* Invoice). Even so, the Court cannot be assured that such credit was extended under the terms of the Credit Application. The Court is unwilling to take the leap of applying the Credit Application's terms to the parties' agreement when Plaintiff has provided no substantive argument or affirmative evidence to that effect.

Finally, Plaintiff offers no other justification to overlook NY Garden's complaints regarding particular shipments. In its Complaint, Plaintiff alleges that purchase orders sent for each of the events catalogued on the Invoice also required any complaints to be reported within 24 hours. (*See* Compl ¶ 17). But Plaintiff has not submitted these purchase orders in support of its

CASE NO. 23-20073-CIV-ALTONAGA/Damian

Motion, and the Invoice includes no such language.[7] In sum, the Court will not grant summary judgment on the breach-of-contract claim because genuine disputes of material fact remain regarding the terms of the parties' agreement and the effect of Defendants' objections on the amount of damages.

### C. Count IV: Breach of Contract by Paih

Plaintiff asserts it is entitled to summary judgment on Count IV, because Paih signed the Credit Application as a guarantor for NY Garden's obligations, NY Garden failed to make payments on the Invoice, and Paih failed to step in and cover those payments. (*See* Mot. 5–6). Incredibly, Paih suggests the Credit Application's guarantor provision does not apply because he did not know about it when he signed the Application. (*See* Resp. 10 (suggesting Paih "misunderstood" the terms of the Credit Application); Paih Aff. ¶ 4 ("I had no idea that the Credit Application contained my personal guarantee for shipments.")). "It is well-established the failure to review and read a contract prior to its execution is not a defense against its application." *Santana v. Miller*, 314 So. 3d 346, 349 (Fla. 3d DCA 2020) (citations omitted). But — as explained — because Plaintiff does not sufficiently establish the validity of the Credit Application as a contract or NY Garden's breach of the parties' agreement, summary judgment is inappropriate.

### D. Count V: Unjust Enrichment (NY Garden), and Count VI: Promissory Estoppel (Paih)

Plaintiff seeks summary judgment on its unjust-enrichment claim against NY Garden and its promissory-estoppel claim against Paih, both pleaded in the alternative to Plaintiff's breach-of-

---

[7] In any case, Plaintiff cites no legal authority for why the Court should consider the Invoice, by itself, a valid contract between the parties rather than a document memorializing proposed terms. (*See generally* Mot.). Under Florida law, "[t]he terms of a contract *for the sale of goods* may be encompassed in an invoice or series of invoices." *Assicurazioni Generali S.p.A. v. Facey Commodity Co., Inc.*, No. 10-20736-Civ, 2012 WL 12865254, at *3 (S.D. Fla. Sept. 27, 2012) (alteration and emphasis added; collecting cases). Plaintiff's claim relates to an agreement for a service — the shipping of flowers (*see* Compl. ¶¶ 8–9) — and not for the purchase of goods.

contract claims against Defendants. (*See* Compl. ¶¶ 39–47). Plaintiff cannot succeed on either claim if an express contract exists between the parties. *See F.H. Paschen, S.N. Nielsen & Assocs. LLC v. B&B Site Dev., Inc.*, 311 So. 3d 39, 49 (Fla. 4th DCA 2021) ("As a general principle, a plaintiff cannot pursue an implied contract theory, such as unjust enrichment or quantum meruit, if an express contract exists." (citations omitted)); *Univ. of Miami v. Intuitive Surgical, Inc.*, 166 F. App'x 450, 454 (11th Cir. 2006) ("Promissory estoppel is not available as a remedy when parties have a written contract addressing the relevant issues[.]" (alteration added; citation omitted; applying Florida law)). Whether a valid express contract exists between the parties remains to be proven at trial. Accordingly, summary judgment on these claims is unavailable. *See Doerr v. Abplanalp*, No. 19-cv-1194, 2021 WL 1979430, at *12 (M.D. Fla. Jan. 13, 2021) (denying summary judgment on an unjust enrichment claim when there existed genuine disputes of material fact on a related breach-of-contract claim and noting summary judgment was inappropriate without resolving the "fundamental first question" of the alleged contract's existence).

###### E.      Affirmative Defenses

Plaintiff seeks summary judgment on all nine of Defendants' affirmative defenses. (*See* Mot. 8–16). Defendants provide several arguments in response, all of which are unavailing. (*See* Resp. 12–15). Nonetheless, the Court agrees with Defendants that summary judgment on the affirmative defenses — save for part of the second affirmative defense — is unwarranted.

First, Defendants argue summary judgment on the affirmative defenses is "premature[,]" especially when, at the time of filing the Response, they had not yet been able to review approximately 2,000 pages of discovery produced by Plaintiff the week before. (Resp. 12 (alteration added); *see id.* 14–15). The July 24, 2023 deadline to complete discovery was long past at the time of the briefing. (*See* Scheduling Order [ECF No. 10] 2). Even if the parties extended

the discovery deadline by agreement, as allowed under the Scheduling Order (*see id.* 2 n.1), there is no "blanket prohibition on the granting of summary judgment motions before discovery closes[,]" *Garmley v. Cochran*, 651 F. App'x 933, 936 (11th Cir. 2016) (alteration added; citations and quotation marks omitted). Defendants do not further explain why the additional discovery should preclude consideration of Plaintiff's Motion. (*See generally* Resp.).

Next, Defendants advance specific arguments opposing summary judgment on five of the affirmative defenses, but the arguments are cursory, unsubstantiated by legal authority, and/or difficult to understand. (*See id.* 13–14). The Court does not address these arguments — if they can indeed be characterized as such — because it nonetheless determines that summary judgment is inappropriate on all but part of the second affirmative defense.

To start, the Court addresses the first part of Defendants' second affirmative defense, which states that the Credit Application's guaranty provision is unenforceable against Paih because it contains only Paih's signature. (*See* Third Am. Answer 8). Plaintiff is correct in asserting that Florida's "statute of frauds requires a written contract guaranteeing the debt of another to be signed only by the person to be charged." (Mot. 9 (emphasis omitted; citing Fla. Stat. § 725.01)). Therefore, summary judgment in favor of Plaintiff on this narrow issue is proper.

But summary judgment is inappropriate on Defendants' remaining affirmative defenses. For instance, Defendants' third, fourth, fifth, seventh, and eighth affirmative defenses all implicate material facts in dispute. Defendants' third affirmative defense is that Defendants have already paid part of the amount reflected on the Invoice; the fourth is that Plaintiff delivered flowers in an unsellable condition; the fifth is that Plaintiff breached the contract first by failing to perform the shipping services; and the eighth is that Plaintiff ignored Defendants' complaints and thereby

CASE NO. 23-20073-CIV-ALTONAGA/Damian

failed to mitigate its damages. (*See* Third Am. Answer 7–9). Defendants' seventh defense duplicates the third and fourth defenses. (*See id.* 9).

Again, whether Defendants properly objected to certain flower shipments and whether the Invoice accurately reflects the amount owed by Defendants are material facts in dispute that necessarily implicate the merits of these affirmative defenses. "A district court should not grant summary judgment where genuine issues of material fact exist about an affirmative defense." *Bryant v. Rich*, 530 F.3d 1368, 1380 (11th Cir. 2008) (citations omitted) (Wilson, J., concurring in part, dissenting in part); *see also* Fed. R. Civ. P. 56(a).

Relatedly, Defendants' first, ninth, and the remainder of the second affirmative defenses constitute denials of Plaintiff's claims. (*See* Third Am. Answer 7–9). The first affirmative defense denies the validity of the Credit Application's guaranty provision; the ninth ascribes any damage borne by Plaintiff to Plaintiff's own superseding actions; and the latter part of the second affirmative defense states "any obligations alleged against NY Garden are unenforceable." (*Id.* 8).

Plaintiff is correct that these are not proper affirmative defenses. (*See* Mot. 9 (arguing first affirmative defense is a "denial of Plaintiff's claims and thus not a valid affirmative defense"); *id.* 16 (stating ninth affirmative defense "is a mere denial of Plaintiff's claim and not an affirmative defense"); *id.* 10 (stating latter part of second affirmative defense "is not a proper affirmative defense but rather a denial of Plaintiff's claims")). "A defense which points out a defect in the plaintiff's *prima facie* case is not an affirmative defense." *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988). "An affirmative defense raises matters extraneous to the plaintiff's *prima facie* case;" furthermore, "it is well established that the party asserting an affirmative defense usually has the burden of proving it." *Id.* (alteration adopted; citations and quotation marks

14

omitted).  "When [a] defendant mislabels a specific denial as a defense, the proper remedy is to treat the claim as a denial[.]"  *FAST SRL v. Direct Connection Travel LLC*, 330 F.R.D. 315, 319 (S.D. Fla. 2018) (alteration omitted; other alterations added; citation and quotation marks omitted). Consequently, there is no need to seek summary judgment on these defenses, the merit of which will be determined at trial.

Finally, in their sixth affirmative defense — which states that "Plaintiff's claims are barred by the principles of Statute of Frauds, laches, estoppel, waiver, and unclean hands" — Defendants seemingly take the approach of throwing spaghetti at the wall to see what will stick.  (Third Am. Answer 8).   Plaintiff seeks summary judgment on this amalgamation of defenses because "Defendants cannot point to anything on the record in support of their allegations."  (Mot. 14). The Court will not attempt to determine the extent of the parties' factual disputes on their competing allegations and denials.  *See Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001) ("[T]he Supreme Court has acknowledged that, even in the absence of a factual dispute, a district court has the power to deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial."  (alteration added; citations and quotation marks omitted)).   Given the parties' deficient briefing on these matters — and indeed on all the arguments presented for or against summary judgment — and the Court's denial of summary judgment on Plaintiff's claims, the Court has reason to "believe[] the case would benefit from a full hearing" on these issues.  *United States v. Certain Real & Pers. Prop. Belonging to Hayes*, 943 F.2d 1292, 1297 (11th Cir. 1991) (alteration added; citation omitted).

CASE NO. 23-20073-CIV-ALTONAGA/Damian

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff Floral Logistics of Miami, Inc.'s Motion for Summary Judgment **[ECF No. 49]** is **GRANTED in part and DENIED in part**.   Summary judgment is granted in favor of Plaintiff on the first part of Defendants' second affirmative defense. Summary judgment is denied as to all other issues.

**DONE AND ORDERED** in Miami, Florida, this 6th day of November, 2023.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

16